[No. 35544.   Department One.   January 26, 1961.]

THE DORIC COMPANY, *Appellant*, v. KING COUNTY *et al.,* *Respondents.*[1]

[1]Reported in 358 P. (2d) 972.

*Rosling, Williams, Lanza & Kastner* and *William D. Cameron,* for appellant.

*Charles O. Carroll* and *Charles R. Lonergan, Jr.,* for respondents.

HUNTER, J.—This is an appeal from a summary judgment dismissing an action for a refund of a real estate sales tax. The question presented by this appeal is whether a distribution of real property by a trustee in dissolution of a corporation to the corporation's sole stockholder as part of a voluntary dissolution proceeding, where there is no agreement by the distributee-stockholder to assume the corporate liabilities, is a "conveyance, grant, . . . or transfer . . . for a valuable consideration . . ." within the meaning of and, therefore, subject to the one per cent tax on real estate sales, as authorized by RCW 28.45 and as implemented by King county resolution No. 18313, enacted by the board of county commissioners on April 14, 1958.

The facts are stipulated. By 1958, the plaintiff acquired all the outstanding stock of the Kellerblock Corporation. The sole asset of the Kellerblock Corporation was an apartment building in Seattle, known as the Grosvenor House, which was encumbered by a mortgage securing a $2,550,000 note payable in installments to the Massachusetts Mutual Life Insurance Company.

On October 31, 1958, proceedings for the voluntary dissolution of the Kellerblock Corporation were commenced by the plaintiff as the sole stockholder, and a trustee was appointed to wind up the affairs of the corporation out of court. At this time, the balance on the note was $2,346,-363.07, and the Grosvenor House was valued at $5,100,000.

On November 17, 1958, the trustee in dissolution executed an instrument entitled "Warranty Deed" to the plaintiff, which contained a "legal description" of the Grosvenor House. In this instrument was a statement that the "prop-

erty is conveyed subject to the lien of real property mortgage executed by KELLERBLOCK CORPORATION as Mortgagor to MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY." The plaintiff did not assume this mortgage obligation.

The Massachusetts Life Insurance Company was not notified of the dissolution proceedings or of the situation regarding the note and mortgage. No agreement was ever entered into by the trustee in dissolution with the insurance company or anyone else regarding the disposing of the obligation evidenced by the note and secured by the mortgage.

After the distribution, the plaintiff made all the payments on the note out of income from the operation of the Grosvenor House. The Grosvenor House is treated as an asset, and the unpaid balance on the mortgage obligation is treated as a liability on the plaintiff's books for bookkeeping purposes. The unpaid balance on the mortgage obligation attributable to the depreciable portions of the Grosvenor House is depreciated on the plaintiff's books by the declining balance method; that is, the unpaid portion of the mortgage obligation attributable to the building is paid off on a prorated method in monthly amounts equal to the unpaid balance divided by the life expectancy in months of the building.

The plaintiff paid a real estate sales tax on the distribution, based upon one per cent of the amount of the unpaid balance on the mortgage obligation, to the defendant treasurer under written protest, and brought a timely action for the refund, plus interest and costs. Upon the entry of a summary judgment dismissing the action, the plaintiff appeals.

The disposition of this appeal is governed by *Deer Park Pine Industry v. Stevens County,* 46 Wn. (2d) 852, 286 P. (2d) 98 (1955). That case also involved the distribution of real property to stockholders pursuant to a voluntary dissolution proceeding. We held the distribution was a taxable event under RCW 28.45 and the implementing county ordinance, by reason of an assumption by the stockholder of the corporation's liabilities.

In the *Deer Park* case, we succinctly outlined the process of corporate dissolution and the distribution of assets to stockholders thereunder. We said that the ownership of corporate stock

". . . carries with it the inherent right to participate in the control of the corporation, while it is operating as such, and the inherent right to share in the assets of the corporation—after creditors—when it is in the process of dissolution.

"The transition from the power to exercise the one right to the enjoyment of the other is governed by statute. The ultimate right of a particular stockholder to share in the assets of the corporation upon dissolution is not affected by his vote for or against dissolution, provided the vote in favor of dissolution is sufficient under the statute. . . . [RCW 23.01.530]

"When dissolution has commenced, the authority and duties of the directors and officers of the corporation cease, except in so far as it may be necessary to preserve the corporate assets, and any transfer of shares or alteration in the status of shareholders is void, except as a court may otherwise order, if the proceeding is subject to the supervision of the court. . . . [RCW 23.01.600]

. "If dissolution is not under the jurisdiction of the court, the powers and duties necessary to effect dissolution are vested by statute in the liquidating trustee. . . . [RCW 23.01.580]"

Among other things, the statute setting forth duties of the trustee, which has been amended subsequent to the commencement of the action in the *Deer Park* case, directs the trustee in dissolution to collect all sums due the corporation, sell and convert into cash such corporate assets as are not to be distributed in kind to the stockholders, and pay or adequately provide for all debts and liabilities of the corporation; and

"Any surplus remaining after paying or adequately providing for all debts and liabilities of the corporation shall be distributed, either in cash or in kind, by the trustee or trustees to the shareholders according to their respective rights and preferences." RCW 23.01.560.

The amendment to RCW 23.01.560 does not make the rea-

soning in the *Deer Park* case inapplicable to the instant case.

■ On the basis of this outline of the statutory process of corporate dissolution and distribution of assets in the *Deer Park* case, we stated,

" . . . There is no conveyance for a valuable consideration, taxable under the ordinance and statutes we are considering, where a change of title to real property is effected solely as a result of its distribution to stockholders of a solvent corporation in the process of dissolution except as hereafter noted. See *United States v. Niagara Hudson Power Corp.*, 53 F. Supp. 796, 801 (D.C.S.D. N. Y.; 1944). The change in title is but the fruition of a right which accrued to the stockholder at the time the stock was acquired."

We are not willing to depart from this reasoning. We found the distribution in the *Deer Park* case was a taxable event because the stockholders had agreed by contract to assume the corporate liabilities in consideration for the trustee's undertaking to distribute the corporate assets in kind. Under the law applicable at the time of that voluntary dissolution, the trustee in dissolution had no authority to distribute the corporate assets in kind. It was in order to obtain such a distribution that the stockholders entered into the agreement.

■ Unlike the *Deer Park* case, the instant case contains no agreement by the stockholder to assume any corporate liabilities. Under the facts of the instant case, such an agreement would be necessary for there to be a "conveyance, grant, . . . or transfer . . . for a valuable consideration" within the meaning of the statutes and resolutions we are considering, because implicit in the term "valuable" consideration is the principle that it must be bargained for. See Corbin, *Contracts,* §§ 131, 132 (1950, Supp. 1957).

■ The respondent argues we held in the *Deer Park* case that an agreement by the stockholders to assume the corporate liabilities is implicit from the very nature of distribution of assets in furtherance of corporate dissolutions. We disagree. We found an agreement to assume

corporate liabilities by the stockholders from the meager stipulated facts in that case, although such an agreement was not spelled out therein. We did not find that, as a matter of law, stockholders agree to assume the corporate liabilities when they seek a voluntary dissolution of the corporation.

■ The respondent argues, however, that the appellant should now be held, by implication of law, to have agreed to assume the mortgage obligation since, under RCW 23-.01.560, the trustee was under a duty to pay or adequately provide for all debts and liabilities of the corporation. We disagree.

Since the value of the encumbered property was twice the amount of the mortgage obligation, this corporate obligation was adequately provided for by the trustee. Moreover, we cannot imply from the requirement that a trustee must pay or adequately provide for corporate liabilities that, in fact, this trustee entered into an agreement with the appellant for the latter to assume the obligation. The principles of mutual assent preclude such an implication being made.

Since no taxable event occurred under the resolution and statutes we are considering, the judgment from which this appeal is prosecuted is reversed, and the cause remanded with direction to enter a judgment for the appellant consistent with this opinion.

FINLEY, C. J., DONWORTH, WEAVER, and OTT, JJ., concur.

March 27, 1961. Petition for rehearing denied.