[No. 21421–7–I.   Division One.   December 19, 1988.]

DON ZIMMERMAN, ET AL, *Respondents*, v. SARA KYTE, ET AL, *Appellants*.

WILLIAMS, J., concurs in the result only.

*Gary W. East,* for appellants.

*Monte E. Hester* and *Wayne C. Fricke,* for respondents.

WEBSTER, J.—Sara Kyte appeals a judgment in favor of Don and Kathryn Zimmerman on a cause of action previously owned by Plaza Drug Corporation. Kyte does not dispute her liability on the merits but argues that the Zimmermans lacked standing as shareholders of Plaza to prosecute the claim and that the corporation could not do so because it failed to pay its annual license fee. The Secretary of State dissolved Plaza during the course of this action because of the fee delinquency, and the Zimmermans now claim title to the cause as Plaza's successors.

## FACTS

In 1974, Don Zimmerman and Michael Bloom formed Plaza Drug Corporation for the purpose of purchasing and operating a drugstore. Zimmerman and his wife owned one-half of Plaza; Bloom owned the other half. Zimmerman was

secretary–treasurer and Bloom was president. Together, they managed the corporation.

A tort claim for contractual interference accrued to Plaza in November 1984 when Kyte and other employees prevented Plaza from negotiating a lease. Zimmerman and Bloom met in March 1985 to discuss Plaza's response to the loss of its lease and to a fire that occurred at the drugstore premises in February. They decided to "dissolve" Plaza at this meeting and to "liquidate" Plaza's assets. According to Bloom, they distributed Plaza's claim against Kyte to the Zimmermans.

The Zimmermans filed suit on the claim in October 1985 naming themselves and Plaza as plaintiffs. Kyte challenged the Zimmermans' standing, arguing that they were mere shareholders and that only the corporation could sue. The Zimmermans responded by averring that Plaza had been voluntarily dissolved and that the corporation had transferred its rights to them. They moved for an order substituting themselves as plaintiffs in place of Plaza. The court summarily granted their request and ordered substitution in February 1986. Kyte received notice but did not object.

Bloom moved to intervene after substitution on alternative grounds. First, Bloom argued that he was a stockholder in Plaza and thus co–owned the cause. Second, he asserted that as an employee of Plaza he had a right to recover for lost wages resulting from Plaza's employees' tort. The court granted Bloom's motion, noting this time as before that Kyte did not object.

Kyte moved to dismiss all claims at the end of trial, on June 10, 1987. The court granted the motion as to Bloom because, as Kyte argued, both Zimmerman and Bloom testified that Plaza's claim passed to the Zimmermans. Kyte argued that the Zimmermans failed to prove essential elements of the tort of contractual interference and that therefore their claim should be dismissed as well. However, the court denied Kyte's motion as to the Zimmermans.

The parties discovered and stipulated a week later, on June 17, 1987, that the Secretary of State dissolved Plaza 1

month after substitution because Plaza failed to pay its annual license fee. Kyte argued at a hearing on proposed findings in September 1987 that the administrative dissolution was the only evidence of dissolution. Therefore, Kyte contended, part of a proposed finding suggesting that Plaza had been dissolved "by agreement of the principals" should be stricken. The court agreed and simply found in accordance with the remainder of the proposed finding that Plaza had been dissolved and that the lawsuit had been transferred to the Zimmermans. Kyte did not dispute this finding, although she now contends that the evidence does not support a transfer.

### SELF–INVITED ERROR

Kyte's reliance on a transfer of cause from Plaza to the Zimmermans in obtaining a dismissal against Bloom and her acquiescence in this theory as against Plaza prevents her from contradicting it now. A party may not use theories or arguments to his or her advantage at trial and then argue on appeal that they were erroneously accepted by the trial court. *See State v. Lewis,* 15 Wn. App. 172, 176, 548 P.2d 587 (1976); *State v. Newman,* 4 Wn. App. 588, 592, 484 P.2d 473, *review denied,* 79 Wn.2d 1004 (1971). In *Lewis,* the defendant requested instructions on third degree assault as a lesser included offense to second degree assault and then asserted on appeal that, since third degree assault is not included within the definition of second degree assault, there was a complete lack of evidence to support the conviction. In *Newman,* defense counsel argued that his client was prejudiced by a mug shot revealing a prior arrest, but counsel maintained on voir dire in the presence of the jury that a photo montage including the defendant was not necessarily the same one shown to a key identifying witness for the prosecution, because many of the persons photographed in the montage had been previously arrested and photographed. Counsel also did not specifically object to the problem presented by the mug shot. In both cases, the Court of Appeals held that the defendants invited the error

from which they appealed and could not complain of the resulting prejudice.

In the case at hand, counsel for Kyte did not object to substitution, but obtained a dismissal of Bloom's claim on the theory that the Zimmermans owned the entire tort claim previously held by Plaza. Counsel did not renew Kyte's objection to the Zimmermans' standing upon learning of Plaza's postassignment administrative dissolution but instead acquiesced in the benefit of having two fewer plaintiffs, Plaza and Bloom, against whom to defend. If Kyte were now permitted to challenge the trial court's finding, she would obtain a double benefit. The court's judgment is res judicata as to Plaza and Bloom, and, in any event, Plaza no longer exists. "Having gambled and won in the face of unfriendly odds, [Kyte] should not now be heard to complain of [her] victory, however hollow it might now appear to be." *Lewis,* at 176.

### SUFFICIENCY OF THE EVIDENCE

The thrust of Kyte's argument is that the evidence does not establish a transfer of Plaza's tort claim to the Zimmermans. Kyte argues that the Zimmermans predicated the transfer on a voluntary dissolution of the corporation. Since the trial court expressly found that there was no dissolution "by agreement of the principals," Kyte infers that no transfer ever occurred. Plaza thus held the cause at all critical times, and RCW 23A.44.120 prevented the corporation from suing to enforce it.

Kyte's argument is flawed in two respects. First, RCW 23A.44.120 is not a bar to the instant action by the Zimmermans. Second, the trial court did not predicate its finding that the Zimmermans owned this action on a supposed voluntary dissolution of Plaza.

■ RCW 23A.44.120 provides that

> [n]o corporation shall be permitted to commence or maintain any suit, action, or proceeding in any court of this state, without alleging and proving that it has paid

or contracted to pay as herein provided all fees and penalties due the state of Washington under existing law or this title.

Kyte did not raise RCW 23A.44.120 as a defense to Plaza's suit, or argue that the statute disabled the Zimmermans. But even assuming that the issue is properly before this court, RCW 23A.44.120 does not prevent the Zimmermans from suing as successors to Plaza. As construed, the statute bars suit by a foreign corporation's assignee only when the corporation has failed to pay its annual license fee *and* to comply with all other laws applicable to foreign corporations transacting business within Washington. To hold otherwise would "permit a foreign corporation, in contravention of Art. XII, § 7 of the constitution, to transact business in the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state." *Association Collectors, Inc. v. Hardman,* 2 Wn.2d 414, 417, 98 P.2d 318 (1940). However, RCW 23A.44.120 does not inhibit suit by the assignee of a domestic corporation which has failed to pay its annual license fee, if the corporation has complied with all laws relating to its corporate status. *See Hardman,* at 416–17 (distinguishing *Pacific Drug Co. v. Hamilton,* 71 Wash. 469, 128 P. 1069 (1913) and *Marshall v. Pike,* 145 Wash. 348, 260 P. 531 (1927)). Since Plaza was a domestic corporation and its only delinquency was its failure to pay its annual license fee, the Zimmermans could sue as the corporation's successors.[1]

▮▮ At the same time the trial court agreed with Kyte that Zimmerman and Bloom did not dissolve Plaza, the court nevertheless found that the evidence established a

---

[1]Plaza's failure to pay its annual license fee probably resulted from Zimmerman and Bloom's mistaken impression that they had dissolved the corporation. After the State dissolved Plaza, there was no longer a corporation to be barred by RCW 23A.44.120. The concern that a delinquent corporation might assign its claim to avoid the effect of the statute is absent following dissolution because the corporation no longer exists. It thus appears that administrative dissolution is the final punishment of a delinquent corporation and that it moots the effect of RCW 23A.44.120, which itself presumes the existence of a corporate entity.

transfer. Dissolution is not the only means of transferring a corporate cause of action, so the trial court could have relied upon some other theory. Kyte did not ask the court to explain itself, so we do not know which theory of transfer the trial court adopted. Even so, the court's finding must stand if substantial evidence supports it, regardless of the theory applied below. *Hellbaum v. Burwell & Morford,* 1 Wn. App. 694, 699, 463 P.2d 225 (1969).

At least two theories of transfer are sustainable under the evidence presented. First, the trial court may have found that Zimmerman and Bloom assigned the cause to the Zimmermans when they "liquidated" Plaza, even though they erroneously believed that they thereby effectuated a dissolution. Second, the trial court may have based its finding on Plaza's administrative dissolution.

## I
### ASSIGNMENT THEORY

■ A corporation may "distribute" assets to a shareholder at any time, so long as creditors of the corporation are not prejudiced thereby. RCW 23A.08.420. The distribution need not be authorized by the corporation's board of directors when the corporation's shareholders unanimously consent. *Glover v. Rochester–German Ins. Co.,* 11 Wash. 143, 39 P. 380 (1895). No particular words are required for a valid and binding assignment entitling the assignee to sue in the assignee's own name. Rather, any language showing an intent in the owner to transfer and invest the cause in the assignee is sufficient. *Amende v. Morton,* 40 Wn.2d 104, 106, 241 P.2d 445 (1952).

Finally, the assignment need not be in writing, at least not in this case. RCW 4.08.080 permits an assignee of a chose in action "by assignment in writing" to sue on the cause in the assignee's own name. This statute is in derogation of the common law rule *against* assignment of a chose, and should ordinarily be strictly construed. However, an oral assignment satisfies the statute when the assignor takes the witness stand and testifies that the assignment

occurred. *Ingle v. Ingle,* 183 Wash. 234, 237–38, 48 P.2d 576 (1935). Since Zimmerman and Bloom, Plaza's sole shareholders and managing officers, both averred that Plaza transferred its tort claim to the Zimmermans, albeit under a mistaken notion of corporate dissolution, the oral assignment satisfies RCW 4.08.080.

The reason for the common law rule is to prevent the debtor from being harassed by multiple suits on the same claim, or being subjected to a multiple liability on it. *Ingle,* at 238. Here, Zimmerman, Bloom, and Plaza are all bound by the court's finding that a transfer occurred, so there is no possibility of multiple recovery against Kyte. The reason for the common law rule being obviated, there is no justification for applying it. *Ingle,* at 238.

## II
### ADMINISTRATIVE DISSOLUTION THEORY

■ When a corporation is dissolved administratively, it ceases to exist. RCW 23A.28.125(3). The corporate assets and liabilities pass to the beneficial owners of the corporation, *i.e.,* the shareholders, subject to the claims of corporate creditors. RCW 23A.28.250; *Ban–Mac, Inc. v. King Cy.,* 69 Wn.2d 49, 416 P.2d 694 (1966).

Under the administrative dissolution theory, neither Plaza nor the Zimmermans could sue initially because Plaza was statutorily barred and the Zimmermans' rights were derivative. A shareholder who owns all or practically all of a corporation's stock is not entitled to sue as an individual because the shareholder "cannot employ the corporate form to his advantage in the business world and then choose to ignore its separate entity when he gets to the courthouse." 12B W. Fletcher, *Private Corporations* § 5910 (1984).

Nevertheless, when Plaza ceased to exist, the Zimmermans became owners of the cause personally, since Bloom previously conceded that it was theirs. The question then is whether the Zimmermans' postdissolution ownership of the cause cured their incapacity to sue initially. We conclude that it did.

The general rule is that a plaintiff's failure to own the cause of action at the inception of suit is not cured by the plaintiff's later obtaining the cause. *See Amende,* 40 Wn.2d at 106 (dictum). However, any justification that this rule might have generally is not present in the instant case. Kyte does not dispute her liability on the merits and did not even raise the stated rule as a defense. Kyte has not been prejudiced in any way by the Zimmermans' substitution for Plaza. In contrast, the Zimmermans would have to refile now if we applied the general rule, resulting in a waste of judicial time and resources, and perhaps the claim itself.[2] The equitable doctrine that a party may not benefit from a delayed assertion of rights at the expense of the party's opponent will not countenance this result. *Cf. State ex rel. Randall v. Snohomish Cy.,* 79 Wn.2d 619, 621, 488 P.2d 511 (1971) ("Laches is an equitable defense based on estoppel, designed to prevent injury to the party asserting it, if such injury is caused by his opponent's delay.").

We conclude that substantial evidence supports the court's finding that a transfer of the cause from Plaza to the Zimmermans occurred, whether the transfer is based on a theory of assignment or administrative dissolution.

Accordingly, the judgment in favor of the Zimmermans is affirmed.

SCHUMACHER, J. Pro Tem., concurs.
WILLIAMS, J., concurs in the result.

---

[2]An adverse judgment might be res judicata against the Zimmermans, and, in any event the statute of limitations has probably run.